on South Main street by the firm, and this of itself will import a consideration for the penalty.

Therefore, in the opinion of the court, the amended petition states a good cause of action in the premises, is not founded upon a contract in the unreasonable restraint of trade, is not oppressive, has a valuable consideration and is not against public policy.

Therefore it becomes the duty of the court to overrule the demurrer to the amended. petition.

---

### ACTION TO COMPEL BUILDING OF A CROSSING OVER A RAILWAY TRACK.

Common Pleas Court of Hamilton County.

PETER ZENS v. C., C., C. & ST. L. RAILWAY.

Decided, 1912.

*Covenants—Agreement by a Railway Company to Build a Crossing— Not a Covenant Running with the Land, When.*

A recorded agreement wherein a railway company covenanted with an owner of land abutting on its line to construct a crossing over its tracks within one year after the completion of its road, is not a covenant running with the land which may be enforced after a long period of years against the successor of the company which entered into the agreement, where there was no condition requiring a successor to build or maintain such a crossing, or any reservation to the grantor of a right-of-way over said railway tracks.

*S. B. Hammel* and *F. M. Coppock,* for plaintiff.
*Harmon, Colston, Goldsmith & Hoadly,* contra.

GORMAN, J.

This is an action for specific performance of a contract or perhaps for a mandatory injunction to require the defendant company to construct a roadway across its railroad's right-of-way at the south end of the village of Hartwell, so as to furnish access to the plaintiff to his lands lying on the east and the west side of said railroad.

Plaintiff claims that in 1871, his predecessor in title to the land described in the petition, being the Hamilton County House Building Association, entered into a contract with the Cincinnati & Springfield Railroad Company, predecessor in title of the defendant, whereby it was agreed by and between said parties that said Cincinnati & Springfield Railway Company, within one year from the completion of its railway on its said right-of-way, would build a suitable roadway from the highway known as Wayne avenue on the west side of said right-of-way to the part of the premises described in the petition lying on the east side of said railroad; that said agreement was duly recorded on May 13, 1887, by the recorder of Hamilton county. Plaintiff further avers that said railroad was completed shortly after the making of said agreement; that no roadway was ever constructed by the defendant or its predecessor in title, and he prays that the defendant be restrained from further failing and refusing to construct said roadway and that upon a final hearing said injunction may be made perpetual, and for such other and further relief to which he may be entitled.

Whatever may be the nature of the relief to which the plaintiff is entitled it appears to the court that plaintiff is praying for a specific performance of this contract. A demurrer has been interposed to the petition on the ground that it does not state facts sufficient to constitute a cause of action. It is contended by the defendant company that this agreement is not a covenant which runs with the land, but merely a personal covenant or contract entered into between the plaintiff's predecessor in title and the defendant's predecessor in title of its railroad.

I am of the opinion that this agreement is not a covenant which runs with the land. It does not bind the assignee or successor of the defendant's predecessor in title to build or maintain the roadway; nor is there any reservation to the predecessor in title of the plaintiff of a right-of-way over the railroad. It is merely a contract between the parties to build a roadway within one year from the completion of the railroad.

Now, it appears to me that the plaintiff's predecessor in title could have sued for breach of contract and the measure of

damages would have been the cost of constructing the road-way; or, the defendant's predecessor in title might have been called upon to construct the roadway; but it does not follow that the successor in title of the Cincinnati & Springfield Railway Company took the railroad burdened with this covenant. I think this conclusion is supported by the cases of *Steible* v. *Railway*, 18 Bull., 202, and *Austerberry* v. *Oldham*, 29 L. R., Ch. Div., 750, a decision of the Court of Appeals of England. The facts in this latter case were very similar to those in the case at bar. In that case a party had granted to certain trustees a piece of land over which it was covenated that the trustees should construct and maintain a roadway of which the public should have the use, but in which the owner of the property granted should have certain special rights and privileges appertaining to the remainder of the property. The trustees afterwards sold the property covered by the roadway to another party, and the court held that the covenant to construct and maintain the road was not one that ran with the land, and was not binding upon the assignee. It will be observed that in that case the covenant was one not only to build the road but also to maintain it, apparently a much stronger case than the one at bar.

In the case of *Masury* v. *Southworth*, 9 Ohio St., 341, Judge Gholson in deciding this case uses this language at page 349:

"In determining whether a particular covenant was intended to run with the land, the fact that its particular subject-matter was not in existence at the time the estate was created is undoubtedly very important and material, and in many instances might be regarded as a controlling consideration. In such a case, though the subject-matter be connected with the land, as a house or wall to be built upon it at a future day during the term, yet if nothing more appeared to indicate the intent, it might be regarded as a personal covenant, and not running with the land. If, however, an intent be shown that the covenant shall run with the land by binding the 'assigns' in so many words, then the covenant does run with the land and the assignee of the lease is bound. Thus, it was resolved, in the leading case upon this subject: 'If the lessee had covenanted for him and his assigns that they would make a new wall upon some part of the thing demised, that forasmuch as it is to be done upon the land demised, that it should bind the

assignee; for although the covenant doth extend to a thing to be newly made, yet it is to be made upon the thing demised, and the assignee is to take the benefit of it, and therefore shall bind the assignee by express words.' Spencer's case, 5 Coke, 16 b.''

In the case at bar, if the Cincinnati & Springfield Railway Company's assigns or successors had been obligated in the covenant to build the roadway, I have no doubt that the covenant would have been one that would run with the land. Or, if there had been a reservation by the grantor—the Hamilton County House Building Association—of a roadway over the railroad company's right-of-way, and a covenant to build the roadway on the part of the defendant company's predecessor in title, I am disposed to believe that such a covenant would run with the land. But the covenant in this case appears to be merely one between two companies and does not appear to undertake to bind their successors or assigns.

The case of *Easter* v. *Railway,* 14 Ohio St., 48, has been cited by counsel for plaintiff, but a perusal of the facts in that case will disclose that the grantor covenated for himself, his heirs and assigns to erect and maintain a fence on each side of the right-of-way of the railroad company, and he reserved the right to pass and repass over the railroad in such a way as not to interfere with the running of trains. The court very properly held in that case that this was a covenant which ran with the land.

The case of *Huston* v. *Railway,* 21 Ohio St., 235, has also been cited by counsel for plaintiff. The facts in that case disclose that the railroad company agreed to erect and ''forever keep up'' fences and crossings on the lands of the plaintiff. This was held to be a covenant which ran with the land. There can be no doubt of the correctness of this ruling, in view of the fact that the railroad company was obligated to erect and ''forever keep up'' fences.

Counsel for plaintiff have cited the case of *Kuebler* v. *Railway,* 10 N.P.(N.S.), 385, at page 393, the quotation from Sugden, Vendors (2d Ed.), 734, 743.

It appears to me that in order that a covenant should be held to be one that runs with the land, it must be made with

reference to something existing on the land or to be put upon it, and that the intention of the parties manifestly appears, either by the instrument or by the surrounding circumstances to have been to bind the assigns, heirs or successors of the party obligating himself under the contract.

In the case at bar, I am unable to see wherein the defendant's predecessor in title undertook to do more than build a roadway. The fact that it owned the railroad over which the roadway was to be built would not make its contract a covenant running with the land, unless there was something in addition to this mere contract which would indicate an intention upon its part to bind its successors and assigns.

It is urged by counsel for plaintiff that both the parties would be benefited by this roadway, and that this should be taken into consideration in determining the character of the covenant. I am unable to see how the railroad company would be benefited by having a roadway over its right-of-way. It would be a benefit to the owner of the land lying on either side of the railroad, but would be an additional burden on the railroad company, both to construct the roadway and to permit it to be maintained and used by the land owners after it should be constructed. There was no obligation resting on the railroad company to maintain the roadway after it was once constructed, but it would be manifestly a burden upon the railroad company's use of its right-of-way for the plaintiff and his predecessor in title to have the right to pass over its right-of-way on this roadway perpetually. It could very readily have been made a part of the consideration for the granting of the right-of-way to the railroad company when the grant of the right-of-way was made in 1871, that this roadway should be constructed and maintained, and that the assigns and successors of the railroad company should be obligated to construct and maintain this roadway. This the parties failed to do, and under the authorities as I read them, this is not a real covenant, one which runs with the land.

The demurrer to the petition will therefore have to be sustained.